United States District Court
Southern District of Texas
**ENTERED**
November 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRITTTANY SALINAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-04120 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the Court are the defendants', City of Houston, Texas, & Houston Police Officers Manuel Salazar & Nestor Garcia, motions to dismiss (DEs 40 & 41). The plaintiffs, the Estate of David Salinas, Brittany Salinas, & Nelda Salinas, have responded (DEs 45 & 47), and the defendants have replied (DEs 49 & 50). After reviewing the motions, the pleadings, the record, and the applicable law, the Court determines that the defendants' motions should be **GRANTED**.

### II. FACTUAL BACKGROUND[1]

In July of 2021, Houston Police Department ("HPD") Officers Manuel Salazar and Nestor Garcia ("the Officers") attempted to pull over David Salinas as part of a sting operation. When he did not pull over, a chase ensued, ending when Salinas

---

[1] In recounting these facts, the Court assumes the truth of the allegations contained in the plaintiffs' second amended complaint.

crashed his car. The Officers parked their cruiser next to Salinas' driver-side door, blocking Salinas in his car. The Officers drew their firearms, called for assistance, and yelled at Salinas, "Hey! Hands! Hands! Hands! Hands!" Injured and disoriented from the crash, Salinas struggled to stabilize himself. He apparently raised and lowered his hands intermittently, and only partially complied with the Officers' orders. When Salinas began reaching for something, Officer Salazar yelled, "Hey! He's reaching!" The Officers fired over rounds into Salinas, killing him. At no point did the Officers see Salinas wield a gun.

### III. CONTENTIONS OF THE PARTIES

The plaintiffs bring seven claims against the City: five Section 1983 claims variously alleging failure to train and supervise, and two state law negligence claims. The plaintiffs also bring four claims against the Officers: two state law negligence claims, a Fourth Amendment claim, and a state-created danger claim.

The City argues that the Section 1983 claims fail because the plaintiffs have not shown a failure to train, constituting deliberate indifference to the plaintiffs' rights. The City further asserts that the state law claims must be dismissed because the Texas Tort Claims Act ("TTCA") does not waive the City's immunity. The City also maintains that the plaintiffs lack capacity to sue.

The Officers, meanwhile, argue that the plaintiffs have not pled facts to overcome the Officers' qualified immunity. The Officers assert that the plaintiffs cannot apply the TTCA to them after invoking it against the City.

The plaintiffs respond to the City by alleging that the Officers had insufficient training, and that the Officers' conduct proves this. The plaintiffs insist that the TTCA waives the City's immunity because the Officers' firearms were tangible personal property under the TTCA. Finally, the plaintiffs urge that the Officers' unreasonable conduct overcomes their qualified immunity.

## IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." Under the demanding standards of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court's review is limited to the allegations in the complaint and any documents attached to a defendant's motion to dismiss, if they are both referred to in the complaint and central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## V. ANALYSIS & DISCUSSION

Before proceeding to the plaintiffs' claims, the Court must address two issues raised by the defendants. First, the defendants challenge the plaintiffs' capacity to bring this suit. In Texas, a personal injury action survives to and in favor of the heirs,

legal representatives, and estate of the injured person. TEX. CIV. PRAC. CODE 71.021(b). Brittany Salinas is the surviving spouse and the Administrator of David Salinas' estate. Accordingly, Brittany has capacity to bring these claims both by virtue of her status as the legal representative of the estate and as Salinas' surviving spouse. The other plaintiffs do not respond to the defendants' argument, nor do they otherwise show their capacity. Accordingly, they are dismissed for lack of standing.

Second, the Court declines the defendant's exhortation to consider footage from the Officers' body cameras. "[T]he court may not look beyond the pleadings in ruling on [a 12(b)(6)] motion." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). While the Court may consider documents that are central to the claims, this footage does not qualify. Rather, "[t]he video here merely records the events on which suit is based, it does not create the events on which suit is based." *Turk v. Mangum*, No. 4:15-CV-1003, 2016 WL 11529682, at *1 (S.D. Tex. June 20, 2016).

A.1. Section 1983 Claims Against the City

*A(1)(a). Failure to Promulgate Guidelines and Failure to Train*

A plaintiff suing under Section 1983 must show that the injuries complained about were caused by a government's policy or custom. "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). A plaintiff need not point to an explicit, written policy, but allege that a "persistent, widespread practice of city officials or employees, which, although not

authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g,* 739 F.2d 993 (5th Cir. 1984).

The plaintiffs allege that two City policies led to Salinas' injuries. First, she pleads that the City failed to promulgate proper guidelines for the use of deadly force. The plaintiffs' complaint undermines this theory: "The acts of the [d]efendant Officers were done with the purpose and intent of using unwarranted deadly force upon the Decedent, in violation of the City of Houston's policy, practice or custom on the use of deadly force." The policy must be the "moving force" behind the plaintiffs' injury. Yet, the plaintiffs plead that the City employees violated the City's policy when they killed Salinas. Accordingly, this theory fails.

The second policy alleged by the plaintiffs is that the City failed to train, supervise, and discipline officers who use excessive force in making arrests. The plaintiffs support this allegation with the assertion that the Officers did not have the Intermediate Proficiency Certification or Crisis Intervention and De-escalation Training required by the Texas Commission on Law Enforcement ("TCOLE"). The plaintiffs also list examples of excessive force claims against HPD over the years.

The plaintiffs' failure-to-train theory requires a plaintiff to prove that "1) the [City] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and, 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur Cty.*, 245

F.3d 447, 459 (5th Cir. 2001). "[D]eliberate indifference generally requires that a plaintiff demonstrate 'at least a pattern of similar violations' arising from training that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson*, 245 F.3d at 459).

The plaintiffs do not specify a pattern of similar violations arising from [the lack of] training. She mentions a 2005 incident in which an HPD officer shot and killed an unarmed suspect, which the plaintiffs allege was due to the officer's lack of training. The plaintiffs also cite a 2014 incident in which an HPD officer pushed an arrestee's head into a jail cell door, and a 2016 incident in which a "Houston jailer" beat an inmate. These three incidents over the last 18 years do not constitute a pattern of violations similar to those alleged here, let alone due to similar training defects. The plaintiffs' unadorned assertion that "[o]ver the past 13 years there have been over 20 instances of Houston Police Department wounding and killing individuals by firearms," with no reference to the type of training that was omitted, does not save their claims.

Finally, the plaintiffs allege a sort of *res ipsa loquitur* failure to train theory: properly trained officers would not have done what the plaintiffs allege, so the Officers must have insufficient training. This *ipso facto* reasoning cannot succeed.

*A(1)(b). State-Created Danger Theory*

The plaintiffs also advance a "state-created danger theory" of liability: "When state actors knowingly place a person in danger, the due process clause of the

6 / 11

constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state 'custody.'" *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). The plaintiffs allege that the City created a danger to Salinas when the Officers blocked his car door with their cruiser.

The problem is that this Circuit has never adopted the state-created danger theory. The Fifth Circuit's most recent treatment of the theory was not promising: "As for whether to adopt the state-created danger theory of constitutional liability moving forward, we are reluctant to expand the concept of substantive due process." *Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023). The plaintiffs' briefing, which does not even attempt to justify the theory's novel use, does not overcome this reluctance.

Finally, to the extent the plaintiffs brings their failure-to-provide-medical-care claim against the City, it fails; the plaintiffs do not even try to fit it into a policy. Thus, the plaintiffs' Section 1983 claims against the City fail.

*A (2) State Law Claims Against the City*

The plaintiffs' state law claims implicate sovereign immunity. "Sovereign immunity is jurisdictional." *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). "Sovereign immunity protects Texas and its political subdivisions—including municipalities like Houston—from suits for money damages." *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754, 762–63 (5th Cir. 2023). The plaintiffs bear the burden of establishing the State's waiver of immunity. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

The plaintiffs do not explicitly assert that the City waived its sovereign immunity. However, the plaintiffs' second amended complaint twice mentions the Texas Tort Claims Act ("TTCA"). The TTCA waives the City's immunity for limited claims of negligence. TEX. CIV. PRAC. & REM. CODE § 101.021. First, the plaintiffs generally assert that "the City of Houston is subject to the [TTCA] for the actions of its agencies, agents, employees, representatives, etc."; and second, "[t]he firearms used that killed Mr. Salinas . . . [were] the type of negligent use of tangible personal property that the TTCA was intended to address."

Even construing the plaintiffs' complaint generously, the plaintiffs' claims do not fall within the TTCA. The plaintiffs' first negligence claim argues that: "The Defendant Officers through the use of the personal governmental-issued property, *i.e.*, the firearms as assigned to them took the life of the Decedent. The conduct of the City of Houston, Texas through its police officers rises to the level of gross negligence." The problem with this assertion is that it merely attempts to backdoor an intentional tort claim—the officer's alleged use of excessive force—as a negligence claim under the TTCA. This is not permitted. "The TTCA limits its waiver of liability on personal injury claims to negligence . . . 'The determinative question is whether the negligence claim arises from the same facts that form the basis of the intentional-tort claim.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 625 (5th Cir. 2018) (quoting *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017)).

The firearm that killed Salinas forms the basis for both the negligence and the Fourth Amendment claims: "Defendant Officers did not shoot just once or twice, they

8 / 11

shot the Decedent multiple times at close range with the *intent* of causing serious bodily harm or death." (emphasis added). This "forecloses [the plaintiffs'] effort to bifurcate those two actions. Thus, the TTCA does not waive sovereign immunity with respect to [the plaintiffs'] claims." *Pena*, 879 F.3d at 625. The same analysis forecloses the plaintiffs' claim of negligence *per se* against the City. Accordingly, the plaintiffs' state law claims must be dismissed.[2]

*B. The Defendant Officers*

The plaintiffs' choice to sue the City under the TTCA forecloses their state law claims against the Officers. "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106. The only remaining claim, then, is the plaintiffs' Fourth Amendment claim against the Officers.

This claim implicates qualified immunity. Qualified immunity shields government officials from liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To survive a motion to dismiss, plaintiffs must 1) plead that a constitutional right was violated and 2) show

---

[2] It is unclear if the plaintiffs intended to bring a negligent training claim under state law. But the plaintiffs do not begin to make an argument that the TTCA waives sovereign immunity for such a claim. Indeed, the bulk of the plaintiffs' response brief focuses on when the TTCA does *not* apply. Accordingly, this claim must also be dismissed.

9 / 11

that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

To show that a right is clearly established, a plaintiff "has two paths: (A) she can identify an on-point case, or (B) she can satisfy the obvious-case exception." *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 132 (5th Cir. 2022), *cert. denied sub nom. Henderson v. Harris Cnty.*, 143 S. Ct. 2661 (2023). A plaintiff's burden for Fourth Amendment claims is especially heavy. *Henderson*, 51 F.4th at 132. A plaintiff must show that the right is "*so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019).

The plaintiffs bring two Fourth Amendment claims: excessive force and failure to provide medical care. The plaintiffs do not attempt to identify an on-point case showing that Salinas' allegedly violated rights were clearly established. Nor do the plaintiffs argue that these facts satisfy the obvious case exception. After fleeing the Officers, Salinas reached for an object instead of fully complying with the order to put his hands up. The entire tragic event occurred in a "matter of seconds." It is therefore not obvious that the Officers' force was excessive. The plaintiffs argue that the Officers acted "unreasonably," but that is not the proper standard. Accordingly, the Officers are entitled to qualified immunity.

## VI.  CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is **GRANTED**. The plaintiffs' claims are dismissed with prejudice. The Court **DENIES** the plaintiffs' motion for leave to replead a third time—the plaintiffs does not specify how a repleading would cure the defects in their complaint, as they have already re-pled twice.

It is so **ORDERED**.

SIGNED on November 30, 2023, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge